**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Abdul–Mussawir JAMES, Appellant.**

Superior Court of Pennsylvania.

Argued March 21, 2012.

Filed June 5, 2012.

Karl Morgan, Public Defender, Philadelphia, for appellant.

Peter Carr, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., BOWES, GANTMAN, PANELLA, SHOGAN, ALLEN, LAZARUS, MUNDY and WECHT, JJ.

OPINION BY SHOGAN, J.:

Appellant, Abdul–Mussawir James, appeals from the judgment of sentence that was originally imposed on October 10, 2008, and corrected in an order filed on November 1, 2010, following his conviction on charges of possession of a controlled substance ("possession")[1] and possession with intent to deliver a controlled substance ("PWID")[2] under the Controlled Substance, Drug, Device and Cosmetic Act ("the CSDDCA").[3] Following *en banc* consideration, we affirm the October 10, 2008 judgment of sentence, as corrected in the order filed on November 1, 2010.

A prior panel of this Court set forth the underlying facts and procedural history of this matter as follows:

James was arrested and charged with the aforementioned crimes based on police observation of a single sale of Oxycodone by James to an unidentified white male. On April 28, 2008, James filed a motion to suppress the physical evidence, arguing that he was stopped without reasonable suspicion that criminal activity was afoot and was arrested without probable cause that a crime was committed. A hearing was held on the motion on August 11, 2008. Agent John Brennan ("Agent Brennan") testified as a narcotics expert regarding his observations of what he believed to be a drug transaction between James and the unidentified white male. He stated that he was conducting surveillance in the 900 block of North 65th Street based on numerous complaints of drug activity in

---

1. 35 P.S. § 780–113(a)(16).

2. 35 P.S. § 780–113(a)(30).

3. 35 P.S. § 780–101 *et seq.*

the area. He observed the unidentified white male walk up and down the street "looking around constantly," and then sit down on the steps in front of 925 North 65th Street. N.T., 8/11/08, at 7.

Agent Brennan then saw James leave a conversation with two individuals at the 6400 block of Jefferson Street, walk directly over to the unidentified white male, pull out an amber colored pill bottle, pour some of its contents into the male's hand, and place the pill bottle back in his pocket. The male then gave James something that James also put into his pocket, although Agent Brennan testified he could not see what was given to James. Agent Brennan stated that based on his expertise and experience, he believed a drug transaction had just occurred and radioed backup officers with a description of James. Police stopped James, went into his pant pockets, and removed $16.00 and the amber pill bottle, which was found to contain 13 Oxycodone pills.

The trial court indicated that it found Agent Brennan's testimony to be credible, and based on his testimony, denied the suppression motion. A bench trial immediately followed, wherein Agent Brennan's prior testimony was incorporated into the record. He was briefly recalled to testify, at which time he indicated that the pill bottle bore James' name and indicated that the prescription had been filled on the day of this incident, June 4, 2007.

James testified that he had a prescription for Oxycodone because he had recently been hit by a car and was experiencing back and arm pain. He stated that the unidentified white male was his neighbor, Joey, and that he merely said hello to Joey as James exited the building. He denied selling or providing Joey with any drugs. He testified that he was on the corner talking to friends when a police officer "attacked" him and he was arrested. *Id.* at 46. James alleged that the police officer told him that unless he could provide them with a "big fish," James would be charged with selling drugs. *Id.* at 55.

The trial court indicated that it found James' version of events to be incredible. He was convicted of possession of a controlled substance and PWID, and sentenced to 3–6 years of incarceration for each crime, to run concurrently. This timely appeal followed.

*Commonwealth v. James*, 3188 EDA 2008, unpublished memorandum at 1–3, 6 A.3d 576 (Pa.Super. filed July 29, 2010). In that prior appeal, Appellant's counsel had petitioned to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The panel concluded there were meritorious issues, denied Appellant's counsel's motion to withdraw, and remanded the matter for further proceedings. On remand, Appellant filed a supplemental Pa.R.A.P. 1925(b) statement, and the trial court filed a supplemental Pa.R.A.P. 1925(a) opinion and corrected the earlier sentencing order.[4] The amended trial court record was then returned to this Court for review of the appeal on the merits. Following remand, the earlier panel filed an opinion on June 17, 2011 that vacated Appellant's judgment of sentence for possession. Thereafter, the Commonwealth filed an application for *en banc* reargument that was granted in an order filed on August 17, 2011, and the opinion vacating Appellant's judgment of sentence was withdrawn.

---

4. The propriety and ramifications of the trial court's correction of the sentencing order will be discussed in greater detail below.

On appeal, Appellant raises two issues for this *en banc* Court's consideration:

1. Was not the evidence insufficient to support the verdict of guilty of possession of a controlled substance as appellant testified that he had a valid prescription for the Oxycodone found in his possession, and there was no evidence that the prescription was fraudulent, unlawfully obtained, or otherwise invalid?

2. Did not the Court err by imposing two separate sentences for possession of a controlled substance and possession with intent to deliver, as those two crimes merge for sentencing purposes, and therefore the sentences are illegal?

Appellant's Brief at 4.[5] We shall address these issues in the order in which they were presented.

In his first issue on appeal, Appellant presents a challenge to the sufficiency of the evidence underlying his conviction of possession. In determining whether the evidence was sufficient to support a conviction, we review the evidence admitted during the trial along with any reasonable inferences that may be drawn from that evidence in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Murphy*, 577 Pa. 275, 284, 844 A.2d 1228, 1233 (2004) (citations omitted). If we conclude, based on that review, that the finder of fact could have found every element of the crime beyond a reasonable doubt, we must sustain the conviction. *Id.* Additionally, it is the responsibility of the trier of fact to assess the credibility of the witnesses and weigh all of the evidence presented. *Commonwealth v. Pruitt*, 597 Pa. 307, 318, 951 A.2d 307, 313 (2008). "In doing so, the trier of fact is free to believe all, part, or none of the evidence." *Id.*

Possession, the offense for which Appellant was convicted, is statutorily defined as follows:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

\* \* \*

(16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

35 P.S. § 780–113(a)(16).

The crux of Appellant's argument is that the Commonwealth failed to establish the elements of possession because it did not disprove Appellant's claim that he had a valid prescription for the Oxycodone tablets he possessed.[6] Appellant's Brief at 12. This burden shifting was analyzed in *Commonwealth v. Sojourner*, 268 Pa.Super. 488, 408 A.2d 1108 (1979).

In *Sojourner*, this Court explained that the Commonwealth has the burden of proving every element of a criminal offense beyond a reasonable doubt, but the burden of going forward with evidence of every aspect of a criminal offense need not rest on the Commonwealth from the outset. *Sojourner*, 408 A.2d at 1113 (citations omitted). With respect to those factors upon which the prosecution must bear the burden of persuasion, the prosecution may shift to the defendant the burden of production, in other words, the burden of going forward with sufficient evidence to justify a reasonable doubt on that issue.

---

5. On appeal, Appellant is not challenging the conviction or sentence for PWID.

6. Oxycodone is a Schedule II controlled substance. 35 P.S. § 780–104(2).

*Sojourner*, 408 A.2d at 1113–1114 (citations omitted). "If the defendant's evidence does not cross this threshold, the issue whether it be malice, extreme emotional disturbance, self-defense, or whatever will not be submitted to the jury." *Id.* at 1114 (citation omitted). The Court in *Sojourner* concluded that, before the prosecution must disprove the accused was authorized to possess narcotics under the CSDDCA, the accused must establish some **credible** evidence of such authorization. *Id.* (emphasis added).

As noted, Appellant claims that there was "no evidence that the prescription was fraudulent, unlawfully obtained, or otherwise invalid." Appellant's Brief at 10. We disagree and conclude that the record belies this contention.

At his non-jury trial, Appellant took the stand. Appellant testified that he had a valid prescription for the pills and that they were prescribed to him because he had been injured in a car accident. N.T., 8/11/08, at 45. Appellant explained that he was on a bicycle when a car driven by his neighbor struck him. *Id.* at 47–48.

However, on cross-examination, Appellant could not remember his neighbor's name. N.T., 8/11/08, at 48. Additionally, Appellant alleged that the pills were prescribed by a "therapist" and not a doctor, and he could not recall the therapist's name. *Id.* at 49. Appellant also testified that his prescription had 20 refills available.[7] *Id.* Finally, Appellant failed to introduce a prescription, testimony from a prescribing physician, or the actual pill bottle in an effort to support his claim that

he was authorized to possess the pills pursuant to the burden shift described in *Sojourner*. For these reasons, the trial court concluded that Appellant was not credible. Supplemental Trial Court Opinion, 1/10/11, at 4. We agree.

As noted above, it was up to the trial court to determine credibility. *Pruitt*, 597 Pa. at 318, 951 A.2d at 313. Upon review, the record supports the trial court's determination that there was no **credible** evidence Appellant was authorized to possess the narcotics. Therefore, there was no need for the Commonwealth to disprove Appellant's claim of authorization. *See Sojourner*, 408 A.2d at 1114 (stating that in order for the burden to shift to the Commonwealth, the accused must come forward with some credible evidence of authorization before the prosecution has to disprove the accused's claim of authorization beyond a reasonable doubt). Here, because the burden never shifted to the Commonwealth, the Commonwealth was not required to disprove Appellant's claim, and the Commonwealth sustained its initial burden and established possession beyond a reasonable doubt.[8]

In his second issue, Appellant argues the trial court erred by imposing separate sentences for possession and PWID because those crimes merge for sentencing purposes, and the imposition of separate sentences is illegal. Appellant's Brief at 4. We point out that, when this case was first appealed, a panel of this Court remanded this matter to the trial court for further proceedings. Upon remand, the trial court recognized the patent

---

7. The trial court noted that it is illegal to prescribe any refills on a Schedule II controlled substance. Supplemental Opinion, 1/10/11, at 4, n. 2 (citing 21 U.S.C. § 829(a)); *see also* 35 P.S. § 780–111(a) (stating that "No prescription for a controlled substance in Schedule II may be refilled.").

8. Appellant does not deny possession of the Oxycodone. He only challenges whether the Commonwealth was required to disprove his claim of a valid prescription.

mistake in the original sentencing order. Trial Court Supplemental Opinion, 1/10/11, at 1. As noted in the recitation of the facts above, the earlier sentencing order imposed a 3 to 6 year sentence for the possession conviction that was graded as a misdemeanor. Because the sentence exceeded the statutory maximum, and because possession merges with PWID for sentencing purposes, the error in the sentence was obvious on the face of the record. On November 1, 2010, the trial court corrected the patently illegal sentence for simple possession and ordered that the possession conviction merged with the PWID conviction. *See Commonwealth v. Williams*, 997 A.2d 1205, 1207 (Pa.Super.2010) (stating that a trial court has the inherent authority to correct a patently illegal sentence even after an appeal from the sentence has been filed). Because the trial court corrected the patently erroneous sentencing order, Appellant's second issue is moot.

For the reasons set forth above, we conclude that there was sufficient evidence to sustain Appellant's conviction for possession, and we further conclude that Appellant's challenge to the legality of his sentence was previously remediated, and is, therefore, moot. Accordingly, the judgment of sentence entered on October 10, 2008, imposing a 3 to 6 year term of incarceration for PWID, as corrected in the order filed on November 1, 2010 (directing that the conviction for possession merged with PWID for sentencing purposes), is hereby affirmed.

Judgment of sentence affirmed.