J-S46003-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
                                              :               PENNSYLVANIA

                 Appellee     :

                           :

                v.                  :

                           :

MIOSOTIS MARIBEL MARTE,      :

                           :

                Appellant     :     No. 200 MDA 2014

Appeal from the Judgment of Sentence Entered September 6, 2013,
In the Court of Common Pleas of Lebanon County,
Criminal Division, at No. CP-38-CR-0000539-2013.

BEFORE: SHOGAN, LAZARUS and MUSMANNO, JJ

MEMORANDUM BY SHOGAN, J.:           **FILED OCTOBER 14, 2014**

Appellant, Miosotis Maribel Marte, appeals from the judgment of sentence entered September 6, 2013, following her conviction by a jury of two misdemeanor counts of defrauding secured creditors. We affirm.

At the start of trial, the prosecutor read the following stipulation of facts between the parties:

> 1. Miosotis Marte (hereinafter referred to as the Defendant), along with two other individuals, Brent Taylor and Bryant Taylor, were tenants, and they actively rented an apartment from John Light, their Landlord.
>
> 2. The Defendant Miosotis Marte, failed to make payments on her rent.
>
> 3. John Light made several attempts to collect payment from the Defendant, with no success.

4.    John Light filed appropriate paperwork in magisterial District Office 52-1-01.

5.    The Honorable Maria M. Dissinger, Magisterial District Judge, entered a civil judgment in favor of Mr. Light and against the Defendant, and two other individuals Brent Taylor and Bryant Taylor.

6.    A civil judgment is an official court document which legally established that a debt is owed by the named individuals to a named creditor.

7.    A valid civil judgment authorizes the creditor, the person to whom the debt is owed to take necessary legal measures to collect the debt that is owed.

8.    The civil judgment was entered against all three individuals referenced above finding them jointly and severally liable.

9.    Joint and several liability means that the creditor may obtain the entire amount of the money judgment against any of the individuals named.

10.   The judgment that Mr. Light obtained in this case was valid in all respects.

11.   A copy of the judgement [sic] is being admitted into evidence as Exhibit Number 2 and is to be made part of the record.

N.T., 8/7/13, at 4–6.   The trial court further summarized the facts as

follows:

The charges against [Appellant] stem from an incident that occurred on August 24, 2012[,] when [Appellant] failed to produce two vehicles to be sold at an Execution Sale.  This sale [was] conducted by the Lebanon County Sheriff pursuant to a judgment lodged against [Appellant] by a Plaintiff by the name of John Light.

* * *

Constable James Drahovsky (hereafter "DRAHOVSKY") testified as to the protocol that must be used when a levy is imposed. DRAHOVSKY described the Order of Execution and Notice that is given [Appellant] and the rights that he/she is entitled to under this Notice. DRAHOVSKY testified that a Notice of Levy gives defendants legal notice that certain property has been levied upon. The Notice of Levy shows the date and time that the constable was there to do the levy on them. DRAHOVSKY went on to say that the Notice of Levy explicitly states that defendants are not to remove property without a Court Order and that such removal, concealment or destruction of property could be considered to be a criminal action. DRAHOVSKY also indicated that [Appellant] was provided with a Notice of Execution Sale, which provided [Appellant] with the date and time the sale was to take place. Finally, DRAHOVSKY testified that this Notice of Execution Sale spells out exactly what property is to be sold.

On August 15, 2012, DRAHOVSKY was given an Order of Execution by the Court for [Appellant]. DRAHOVSKY contacted [Appellant]. In accordance with the above-referenced protocol, DRAHOVSKY provided [Appellant] with a copy of all of the required paperwork. DRAHOVSKY stated that when he served [Appellant] with all of the paperwork, he took the time to explain every piece of paper to her to the best of his knowledge.

The property levied upon was a Ford Windstar, tan in color, with a license plate number HYR-04630 and a vehicle identification number (VIN) 2FM2A51471BA80234. The second item to be levied upon was a red Chevy Lumina LS with license plate number HYV-2225. The execution sale was scheduled for August 24, 2012 at 9:00 a.m. at 1317 Church Street, Lebanon, PA 17046.

At the time DRAHOVSKY served the paperwork to levy upon the property on [Appellant], she admitted to owning both the Ford Windstar and the Chevy Lumina. [Appellant] had a very carefree attitude at the time. She sat on the hood of the vehicle where the VIN was located in order to prevent DRAHOVSKY from obtaining the VIN from the vehicle. At no point on the date that DRAHOVSKY served the paperwork upon

[Appellant] did [Appellant] inform DRAHOVSKY that either car has been in the process of being sold.

On August 24, DRAHOVSKY went to 1317 Church Street, Lebanon, PA to conduct the execution sale. Upon his arrival at the Church Street address, DRAHOVSKY noticed that the red Chevy Lumina was no longer present at the residence. DRAHOVSKY also noticed that the Ford Windstar had a different license plate on it. At this point in time, DRAHOVSKY telephoned the police.

Upon his arrival at the Church Street residence on August 24, Officer John Zatorski of the Lebanon City Police Department, was presented with documentation by DRAHOVSKY that specified the exact property to be sold at the Execution Sale. Officer Zatorski noticed that the Ford Windstar was located on the property. However, he observed that the Ford Windstar had a different license plate on it than had previously been listed on the Notice of Execution Sale. Officer Zatorski ran the license plate number through the Pennsylvania Department of Transportation DMV computer system. The PennDOT printout showed that the HYR-4630 license plate listed on the Notice of Execution was registered to [Appellant]. Officer Zatorski also ran the license plate number that was on the Ford Windstar on the date of the Execution Sale. This license plate with matching VIN number revealed that the Ford Windstar was registered to Tiffany Brockman.

Officer Zatorski questioned [Appellant] about the Chevy Lumina. [Appellant] told Officer Zatorski that her boyfriend had the vehicle at work. She appeared unconcerned by the presence of police and stated that some people just have to go to work. Given the above, charges were filed against [Appellant] by Officer Zatorski.

Trial Court Opinion, 1/3/14, at 1–5 (citations to record omitted).

On August 7, 2013, Appellant was convicted by a jury of two counts of Defrauding Secured Creditors. On September 6, 2013, the sentencing court ordered Appellant to pay the cost of prosecution, a fine of $100, and placed

-4-

her on probation for one year, on each count. The sentencing court also ordered restitution in the amount of $3,328.26 to be paid to John Light. Upon Appellant's compliance with probation for six months, she "may be released from active supervision . . . and is to be retained on probation solely for the purpose of insuring that restitution is paid in a timely fashion." Order, 9/6/13, at 1. Appellant filed timely post-sentence motions on September 11, 2013, which were denied on January 3, 2014. Appellant filed a timely notice of appeal on January 29, 2014. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

Appellant raises the following single issue in this appeal: "Whether Appellant should be acquitted because there was insufficient evidence for Appellant to be found guilty of the charges (two counts) of Defrauding Secured Creditors." Appellant's Brief at 4.

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Diamond*, 83 A.3d 119 (Pa. 2013). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. *Commonwealth v. James*, 46 A.3d 776 (Pa. Super. 2012).

The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. *Commonwealth v. Vogelsong*, 90 A.3d 717, 719 (Pa. Super. 2014). "[I]n applying the above test, the entire record must be evaluated and all evidence actually received must be considered." *Commonwealth v. Estepp*, 17 A.3d 939, 944 (Pa. Super. 2011). Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Ratsamy*, 934 A.2d 1233 (Pa. 2007). "The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict." *Id*. at 1235–1236 (emphasis in original, internal citation omitted).

Appellant was convicted of defrauding secured creditors pursuant to 18 Pa.C.S. § 4110, which provides, "A person commits a misdemeanor of the second degree if he destroys, removes, conceals, encumbers, transfers or otherwise deals with property subject to a security interest or after levy has been made thereon with intent to hinder enforcement of such interest." The trial court explained and concluded, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, as follows:

[Appellant] was convicted of two counts of Defrauding Secured Creditors. The statute criminalizes actions taken by a debtor that intentionally hinder enforcement of a security interest or levy. 18 Pa.C.S.A. § 4110. [Appellant] argues that she at no time acted with the intent to defeat a levy. Specifically, she argues that the Chevy Lumina vehicle belonged to her boyfriend and the Ford Windstar vehicle belonged to Ms. Brockman. In response, the Commonwealth argues that [Appellant] intentionally transferred the vehicles in an effort to defeat the levy that had been placed upon them.

Did [Appellant] intentionally transfer her vehicles so as to render them unsellable at the time of the Execution Sale? The testimony and evidence presented affirms the jury's conviction as follows:

(1) A Stipulation and Judgment was entered in this case at the outset of trial. The Stipulation established the *bona fides* of the judgment lodged against [Appellant] and DRAHOVSKY's levy upon the Lumina and Windstar vehicles.

(2) DRAHOVSKY served the Order of Execution and all necessary paperwork upon [Appellant] on August 15, 2012. This paperwork clearly stated that [Appellant] was not to remove, conceal or destroy said property without a Court Order and that such removal, concealment or destruction could result in criminal charges being filed.

(3) The Order of Execution listed two vehicles to be levied upon. The two vehicles consisted of a tan Ford Windstar, license plate number HYR-04630 with a VIN number of 2FM2A51471BA80234 and a red Chevy Lumina, license plate number HYV-2225. At the time of the levy, [Appellant] owned both vehicles and she failed to identify any other possible owners to DRAHOVSKY.

(4) Upon arrival at the 1317 Church Street residence on the date of the Execution Sale, DRAHOVSKY noticed that the Chevy Lumina was not present.

When DRAHOVSKY questioned [Appellant], she told him that her boyfriend had the vehicle as he had to go to work.

(5) DRAHOVSKY also noticed that the Ford Windstar had a license plate on it with a number different from that which had been listed on the Notice of Execution. DRAHOVSKY then contacted Officer Zatorski of the Lebanon City Police Department.

(6) After Officer Zatorski ran both license plate numbers through PennDOT's DMV computer system, the printout revealed that the Ford Windstar was no longer owned by [Appellant] but was now registered in the name of Tiffany Brockman.

Ultimately the jury believed the Commonwealth's evidence. The jury believed that DRAHOVSKY properly levied upon two vehicles that were owned by [Appellant] and the jury believed that [Appellant] attempted to hide and/or convey these vehicles to someone else in an effort to defeat the levy. More than enough information was presented to establish all of the elements of the crime of Defrauding Secured Creditors.

Trial Court Opinion, 1/3/14, at 8–10.

Appellant's sole argument on appeal is that her testimony and that of Tiffany Brockman established that they had an agreement for Appellant to sell the Ford Windstar to Ms. Brockman before the assessment of the levy. The payments allegedly began in March or April 2012 and concluded in August 2012. As to the Chevy Lumina, Appellant maintains that she never told her boyfriend to remove it from her property on August 24, 2012. "She said that when she got home from work the vehicle was already gone." Appellant's Brief at 10.

While Appellant presents her issue in terms of the sufficiency of the evidence, her one-paragraph argument in her brief, instead, is focused on the credibility of the witnesses. It is well settled that a challenge to the credibility of a witness is a challenge to the weight of the evidence and not to the sufficiency of the evidence. *Commonwealth v. Lopez*, 57 A.3d 74, 80 (Pa. Super. 2012); *see Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. 1999) (stating that although the appellant phrased his claim as a challenge to the sufficiency of the evidence, the challenge actually concerned the weight of the evidence). We recently reaffirmed:

> A weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607; *Commonwealth v. Priest*, 18 A.3d 1235, 1239 (Pa. Super. 2011). Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its [Pa.R.A.P. 1925] opinion. *Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009).

*Commonwealth v. Thompson*, 93 A.3d 478, 490 (Pa. Super. 2014) (quoting *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa. Super. 2012)). In this case, Appellant presented a weight challenge to the trial court in her post-sentence motions, and the trial court concluded that the verdict was not against the weight of the evidence.

Our Supreme Court also recently explained the focus of both the trial court and this Court when faced with a weight-of-the-evidence argument, as follows:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Widmer*, 560 Pa. 308, 319, 744 A.2d 745, 751–52 (2000); *Commonwealth v. Brown*, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Widmer*, 560 Pa. at 319–20, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id*. at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Brown*, 538 Pa. at 435, 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. *Brown*, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Widmer*, 560 Pa. at 321–22, 744 A.2d at 753 (emphasis added).

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013).

Our review of the record reveals that Tiffany Brockman, Appellant's former neighbor, and Appellant testified in substantial conformity to Appellant's characterization in her brief.[1]  ***See*** N.T., 8/7/13, at 45–51.  We decline Appellant's invitation to assume the role of factfinder and to reweigh the evidence.  It is well established that the trier of fact "bears the responsibility to resolve questions of credibility."  ***Commonwealth v. Blackham***, 909 A.2d 315, 319 (Pa. Super. 2006).  Moreover, questions "concerning inconsistent testimony . . . go to the credibility of witnesses."  ***Commonwealth v. Lewis***, 911 A.2d 558, 566 (Pa. Super. 2006).  The jury, as trier of fact, was free to believe all, part, or none of the evidence.  ***Commonwealth v. Diggs***, 949 A.2d 873 (Pa. 2008).

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/14/2014

---

[1]  Appellant did not testify that she never told her boyfriend to remove the Chevy Lumina from her property on August 24, 2012; rather, she testified that he had taken it to work and "people need to go to work. . . . Like I can't stop somebody for getting to their job."  N.T., 8/7/13, at 51.