J-S12027-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSEPH ANTHONY MONTGOMERY, | |
| Appellant | No. 1894 EDA 2014 |

Appeal from the Judgment of Sentence May 8, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0006055-2013

BEFORE:  BOWES, SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED FEBRUARY 27, 2015**

Appellant, Joseph Anthony Montgomery, appeals from the May 8, 2014 judgment of sentence entered in the Court of Common Pleas of Delaware County following a jury trial.  We affirm.

The trial court summarized the facts of the crime as follows:

> At approximately 8:15 a.m. on the morning of July 25, 2012, Pennsylvania State Police responded to reports of a possible robbery that occurred at 127 Barren Road, Media, Delaware County, Pennsylvania.  (N.T. 4/8/2012 pp. 139-40). This location is a business, more specifically, Middletown Archery.  Upon arrival, police observed that the pane of glass in the top half of the door was shattered, and there was a large rock lying next to the door.  (N.T. 4/8/2012 p. 140).  Trooper Jeffrey Hand was the first Trooper to arrive on the scene. Additional police also arrived to assist with the investigation a short time later.

---

[*] Former Justice specially assigned to the Superior Court.

After the building had been cleared for any possible intruder, police began their investigation into the alleged robbery. Police proceeded by contacting the owner of the archery shop, Grace Hadmeck, who lived right next to the shop, the two buildings being separated by a common parking lot. (N.T. 4/8/2012 p. 143). Ms. Hadmeck closed up the archery shop at approximately 9:00 p.m. on July 24, 2012, making sure to turn the heat off, turn on the alarm system, and lock the doors. (N.T. 4/9/2012 pp. 8-9). At around 2 a.m. on July 25, 2012, her dog's barking awakened her. (N.T. 4/8/2012 p. 154). Ms. Hadmeck thought the dog's agitated demeanor was strange because the dog is usually quiet and sleeps through the night in her room. (N.T. 4/8/2012 p. 154).

Police entered Middletown Archery with Ms. Hadmeck in order to assess the damage and determine if any items had been stolen from the shop. The front door that had been broken into was the only point of entry for the shop. Police noticed that the wires used to secure the archery bows to the racks had been cut, a sign that they had been stolen. (N.T. 4/8/2012 p. 156). Troopers and Ms. Hadmeck began to inventory what items had been stolen from the shop. Middletown Archery sells equipment and components for all varieties of archery, including: field archery, 3-D archery, target archery, recreational archery, and hunting archery. (N.T. 4/9/2012 p. 8). The compound bows and crossbows that were stolen were used almost exclusively for hunting archery. (N.T. 4/9/2012 pp. 13-14). The value of the bows and crossbows that were stolen was over $19,000.00. (N.T. 4/8/2012 p. 152). There was other archery equipment that was left behind in the store, primarily for other types of archery, and that merchandise had very similar value to the items that were stolen from the shop. (N.T. 4/9/2012 pp. 13-14). A forensics investigation of the inside of the shop, as well as the exterior of the building yielded no evidence that tied the Appellant to the scene. (N.T. 4/8/2012 pp. 183-84).

At approximately 4:30 a.m. on the morning in question, Ralph Miles, a neighbor of the Appellant's, observed a red Ford Tempo driving up their road with the trunk popped half-open with a tarp covering the contents. (N.T. 4/8/2012 pp. 210-16). Mr. Miles witnessed the Appellant driving the vehicle, and knew that the red Ford Tempo was the Appellant's. Mr. Miles observed the Appellant and his son exit the vehicle once it was parked in

front of the Appellant's home, and take something out of the backseat of the car, then walk into the house. (N.T. 4/8/2012 p. 218). The Appellant then came back outside, got into his [car], and proceeded to drive the vehicle to his backyard. (N.T. 4/8/2012 pp. 219-20). Mr. Miles observed the Appellant and his son taking objects out of the trunk of the vehicle, but he was unable to see exactly what they were moving. Then, after a conversation with the Appellant's son, Mr. Miles walked over to the Appellant's backyard to speak to the Appellant. (N.T. 4/8/2012 p. 221).

Mr. Miles walked up to the Appellant, who was still by his vehicle, and observed some ten (10) to twenty (20) archery bows in the back of the vehicle. (N.T. 4/8/2012 p. 225). The Appellant offered to sell Mr. Miles one of the bows, which Mr. Miles knew to have an estimated value of $800 to $1000, for only $400. (N.T. 4/8/2012 pp. 226-27). The Appellant told Mr. Miles that he had to get rid of them because he and his son had gotten the bows from Middletown Archery. (N.T. 4/8/2012 p. 230). Mr. Miles knew the Appellant was not working at the time when this incident occurred and there were too many bows for the Appellant to be able to afford all of them. (N.T. 4/8/2012 pp. 239-40). A day or so later, the Appellant told Mr. Miles that all of the bows were gone. (N.T. 4/8/2012 pp. 240-41). Mr. Miles observed several vehicles pull up to the Appellant's home from the time that he first observed the bows in the back of the Appellant's car, until the time the Appellant stated that all of the bows were gone. (N.T. 4/8/2012 p. 241). Mr. Miles knew the Appellant had kept at least one bow, a 10-point crossbow for his son, but was unaware if the Appellant kept any other bows. (N.T. 4/8/2012 p. 242). The Appellant told Mr. Miles that he had pawned the crossbow at Aston Pawn Shop in December of that year because he needed money, and that he would have to get the bow back before his son found out. (N.T. 4/8/2012 pp. 246-50).

Mr. Miles eventually contacted police, and later provided a written statement about the hunting bows he observed in the Appellant's vehicle, and the conversations that he had with the Appellant. (N.T. 4/8/2012 pp. 244, 254-55). Mr. Miles also went to Aston Pawn Shop and placed the crossbow on layaway so that no one would buy the bow, and Police would be able to recover it from the Pawn Shop. (N.T. 4/8/2012 p. 250-51). Equipped with this information after having several in-person[]

conversations with Mr. Miles, State Trooper Robert Kirby retrieved the crossbow from the Aston Pawn Shop. The owner of Aston Pawn Shop was able to identify the individual who had pawned the crossbow to the store as the Appellant through the store records. (N.T. 4/9/2012 p. 66). Trooper Kirby then took the bow to Ms. Hadmeck, who was able to affirmatively identify the crossbow as one that had been stolen from Middletown Archery. (N.T. 4/9/2012 pp. 68-69).

Trial Court Opinion, 8/14/14, at 1–4.

Appellant was arrested on August 23, 2013, and charged with burglary, criminal conspiracy to commit burglary, criminal trespass, and driving while operating privilege was suspended or revoked. A jury trial commenced on April 8, 2014, and on April 9, 2014, the jury found Appellant guilty of all charges. The trial court sentenced Appellant on May 8, 2014, to fifteen to thirty-six months of imprisonment for burglary, a consecutive term of fifteen to thirty-six months of incarceration for criminal conspiracy to commit burglary, a concurrent term of sixteen to thirty-two months of imprisonment for criminal trespass; and a concurrent term of ninety days of incarceration for driving while operating privilege was suspended due to driving under the influence, plus payment of a $1,000.00 fine. N.T., 5/8/14, at 19–20.

On May 12, 2014, Appellant filed two timely post-sentence motions, as follows: (1) Motion for Post-Sentence Relief Pursuant to Rule 720(B), and (2) Motion for Reconsideration of Sentence. That same day, defense counsel filed a Petition to Withdraw Representation, which the trial court granted on July 17, 2014. In two orders dated May 28, 2014, the trial court denied

- 4 -

both the Motion for Post-Sentence Relief Pursuant to Rule 720(B) and the Motion for Reconsideration of Sentence. On June 26, 2014, new counsel filed a timely notice of appeal to this Court. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issue on appeal:

> Whether the evidence was insufficient to support the charges of burglary, conspiracy to commit burglary and criminal trespass because the Commonwealth did not prove each element of the crimes beyond a reasonable doubt?

Appellant's Brief at 5.

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. James*, 46 A.3d 776, 779 (Pa. Super. 2012). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. *Commonwealth v. Cousar*, 928 A.2d 1025 (Pa. 2007); *Commonwealth v. Moreno*, 14 A.3d 133 (Pa. Super. 2011). The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *Commonwealth v. Hansley*, 24 A.3d 410 (Pa. Super. 2011). Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v.*

*Ratsamy*, 934 A.2d 1233 (Pa. 2007); *Commonwealth v. Brown*, 23 A.3d 544 (Pa. Super. 2011). Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so inconclusive that as a matter of law no probability of fact may be drawn from the circumstances. *Moreno*, 14 A.3d at 133.

Appellant's argument that the verdict is not supported by sufficient evidence is based on his contention that the "jury made a collective mistake when it convicted Appellant . . . ." Appellant's Brief at 10. Appellant asserts the jury "employed surmise and speculation" because it "evidently" believed that Mr. Miles had knowledge that the bows were stolen. *Id*. at 10.

We conclude that Appellant's challenge to the sufficiency of the evidence is waived because Appellant failed to specify which elements of the crimes were not satisfied. In *Commonwealth v. Samuel*, 102 A.3d 1001 (Pa. Super. 2014), we stated, "In order to develop a claim challenging the sufficiency of the evidence properly, an appellant must specifically discuss the elements of the crime and identify whose which he alleges the Commonwealth failed to prove." *Id.* at 1005. Here, such specificity is lacking in Appellant's claim of error, and therefore, Appellant's claim is unreviewable.[1]

---

[1] Even if not waived, the trial court completely addressed the sufficiency of evidence supporting Appellant's convictions, and we would rely on the
*(Footnote Continued Next Page)*

Judgment of sentence affirmed.

Judge Bowes joins the Memorandum.

Justice Fitzgerald Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/27/2015

---

*(Footnote Continued)* ────────

thorough explanation provided by the trial court in its opinion. Trial Court Opinion, 8/14/14, at 7–16.