J-S23025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRANDON SAWYER, | |
| Appellant | No. 1403 EDA 2014 |

Appeal from the Judgment of Sentence April 10, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012941-2011

BEFORE:  DONOHUE, SHOGAN, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                     **FILED JUNE 01, 2015**

Appellant, Brandon Sawyer, appeals from the judgment of sentence entered following his convictions of first degree murder, carrying a firearm on public streets or property in Philadelphia, and possessing an instrument of crime.  We affirm.

The trial court summarized the factual history of this case, as follows:

> At approximately 1 o'clock in the morning of November 4, 2008, Philadelphia Police Officer Sterling Staton and his partner, Officer Vance, were called to 54th Street and Florence Avenue in West Philadelphia.  When they arrived at the scene, Officer Staton observed the body of the victim in this case, Charmaine McGuilken, lying beneath a pay phone, unresponsive and bleeding from her face.  She had the telephone handset in her hand, and the cord connecting it to the phone had been severed. When the medics arrived a few minutes later, they pronounced her deceased at the scene.  N.T. October 22, 2013, pp. 56-69.

---

[*]  Retired Senior Judge assigned to the Superior Court.

Dr. Sam Gulino, Chief Medical Examiner in the Office of the Medical Examiner of Philadelphia, performed an autopsy on the decedent, Charmaine McGuilken. The decedent sustained two perforating gunshot wounds, to the right side of her face and to her chest. N.T. October 22, 2013, pp. 76-100. Officer John Cannon of the Firearms Identification Unit gave expert testimony that the ballistics evidence recovered at the scene and from the Medical Examiner all came from the same firearm. *Id*. at 153-164.

Corey Williams[1] lived in Southwest Philadelphia in 2008, where he knew two men named Aasim Stibbins and Aaron McCallum. Aaron McCallum, also known as Beano, is the defendant's cousin. On November 4th, 2008, at approximately 1 in the morning, Williams was selling crack cocaine on the 5400 block of Belmar Terrace, which is a little less than two full blocks east of Florence Avenue. He heard shots, but he stayed on Belmar Terrace because they sounded sufficiently far away that he did not fear for himself. Shortly thereafter, he heard police cars rushing to the scene of the shooting and saw [Appellant], Stibbins, and McCallum emerge from an alleyway, looking shocked and fearful. The three men went to Stibbins' house. Earlier that day, Williams had seen McCallum with a gun. He knew McCallum to own two guns, a 40-caliber and a 9-millimeter. *Id*. at 170-181.

At some point after the shooting, Williams was at Stibbins' house speaking with [Appellant] and McCallum. [Appellant] told him that he shot Charmaine McGuilken in the head, and he and McCallum laughed off the incident. [Appellant] said he came out of the alleyway, he shot Charmaine in the head, and when he shot her the receiver on the phone came off. Stibbins seemed more troubled by what had happened. *Id*. at 182-187.

On November 6, 2008, Detective Keith Scott and his partner were working near 55th Street and Florence Avenue. He saw [Appellant] and attempted to stop him, and [Appellant] ran from him for approximately 100 feet. Scott overcame him and

_____

1   Mr. Williams's first name has been spelled either "Corey" or "Cory" throughout the proceedings. For consistency, Mr. Williams's first name will be spelled "Corey."

took him into custody on an unrelated matter. N.T. October 23, 2013, pp. 36-40.

On February 9, 2011, Williams was arrested for selling narcotics. In order to avoid harsh penalties for his narcotics involvement, Williams agreed to give a statement about the murder of Charmaine McGuilken. He told homicide detectives what he remembered from the night of the shooting, and from [Appellant's] confession. N.T. October 22, 2013, pp. 188-197.

Aasim Stibbins knew the decedent, who was his mother's friend. On February 16th, 2011, he gave a statement to police in which he implicated [Appellant]. In his statement, he says that he was leaving a woman's house sometime after midnight and saw [Appellant] and Aaron McCallum coming out of a vacant lot, and then saw [Appellant] raise a gun and shoot the decedent while she was on the phone. N.T. October 23, 2013, pp. 47-79.

On November 8, 2011, Stibbins and his lawyer signed a Memorandum of Agreement with the District Attorney memorializing their agreement that Stibbins testify against [Appellant] in this case, and that the District Attorney would agree to a sentence of time served on Stibbins' open gun case. Stibbins testified at [Appellant's] preliminary hearing that he saw [Appellant] shoot the decedent. *Id*. at 104-145.

On the witness stand, he denied being present for her shooting or involved in any way. Rather, he claimed that the detectives who took his statement used Corey Williams' statement in order to fabricate a statement for him as well, and that he was not present when the shooting occurred but he was threatened with being charged in this case if he did not put himself at the scene as a witness. *Id*. at 47-79.

On March 8, 2011, Tyree Thomas gave a statement to police in which he reported that in February of 2009 he was at Aasim Stibbins' house when Stibbins told him about the shooting. Stibbins said that "the boy, Brandon, shot the fiend in the head while she was on the phone" and that Stibbins had witnessed the shooting, having walked up to the intersection just as it was taking place. *Id*. at 211-224.

Tevin Clark, a friend of Aasim Stibbins, gave a statement on February 17, 2011 that Stibbins had told him that [Appellant] shot the decedent in the eye without provocation, and that

Stibbins witnessed the shooting but was not involved. At trial, he claimed that the statement was inaccurate. *Id*. at 211-232.

At trial, the Commonwealth played recordings of two phone calls that [Appellant] made while he was in custody awaiting trial. In the first one, he discusses the fact that "Corey" (presumably Corey Williams) gave a statement in this case and "told" in some other cases as well. In the second call, he declares that he has statements made by Williams and "Diddy" and "two other young bouls" and "I'm'a send 'em jawns out tonight, you heard me?" N.T. October 28, 2013, pp. 59; Commonwealth Exhibit 39 (transcripts).

Trial Court Opinion, 9/9/14, at 2–5.

On October 29, 2013, a jury found Appellant guilty of the charged offenses. On April 10, 2014, the trial court imposed a sentence of forty-two and one-half years to life imprisonment on the murder conviction,[2] and concurrent sentences of one to two years on the possession of an instrument of crime and carrying a firearm in Philadelphia convictions, respectively. The trial court denied Appellant's post-sentence motion on April 17, 2014. Appellant timely appealed.

On May 27, 2014, while still represented by counsel, Appellant filed a *pro se* Pa.R.A.P 1925(b) statement of errors complained of on appeal. After counsel subsequently filed a separate Rule 1925(b) statement, Appellant filed a motion to proceed *pro se.* Before the trial court ruled on his motion, on June 30, 2014, Appellant filed an additional Rule 1925(b) statement.

---

[2] Appellant was a juvenile when he committed the murder.

On August 25, 2014, following a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998), the trial court granted Appellant's request to represent himself on appeal. In its Pa.R.A.P 1925(a) opinion, the trial court referenced both Appellant's original and supplemental Rule 1925(b) statements and stated that "both are accepted as valid filings . . . ." Trial Court Opinion, 9/9/14, at 2.

Appellant raises the following issues on appeal:

1. Is the Appellant entitled to a new trial whereas the trial judge based her 1925(a) opinion, in part, on her review of a hybrid *pro se* 1925(b) Statement of Matters Complained Of that was rejected by counsel on record and was not part of the court's record?

2. Is the Appellant entitled to a new trial whereas the prosecutor failed to abandon[] the prosecution for purpose of investigation in light of the fact that Commonwealth witness, Aasim Stibbins, testified under oath that [H]omicide [D]etective Santamala and [D]etective Pitts, threatened to try him for the shooting death of the decedent and other unrelated offenses, attempted murder, if he did not be a witness for the Commonwealth?

3. Is the Appellant entitled to a new trial whereas, Corey Williams, a Commonwealth witness, gave testimony which was contradicted by his statement to homicide detectives and by the incontrovertible physical facts rule and in light of the fact that he had reasons to lie with criminal charges pending?

4. Is the Appellant entitled to a new trial whereas the Commonwealth used hearsay testimony to secure a conviction in light of the responsibilities of a Quasi-Judicial Officer of the Court?

Appellant's Brief at 6 (verbatim).

Appellant's preliminary and rather unusual argument is that he is entitled to a new trial because the trial court addressed the claims raised in

both of his *pro se* Rule 1925(b) statements. Appellant asserts that the first *pro se* statement was a legal nullity because it was filed while he was still represented by counsel and the court should have disregarded it because Appellant was not entitled to such hybrid representation.

We reject the notion that Appellant is entitled to a new trial because the trial court exercised caution and diligence in addressing Appellant's claims of error. Additionally, if we accepted Appellant's position that the trial court improperly addressed the issues raised in his May 27, 2014 Rule 1925(b) statement, we would be compelled to decide that it was error for the court to likewise consider his subsequent Rule 1925(b) statement filed on June 30, 2014, because he was still represented by counsel on that date. Rather than concluding that Appellant has completely forfeited his appellate rights, we will address the substantive issues raised in his appellate brief. [3]

Appellant next argues that the Commonwealth committed misconduct when it continued to prosecute him after Aasim Stibbins testified at trial that homicide detectives used threats to force him into giving a statement implicating Appellant in the crime. On or about February 16, 2011, Stibbins was interrogated by Philadelphia Homicide Detectives Pitts[4] and

---

[3] Even if the trial court erred in addressing the issues raised in Appellant's May 27, 2014 Rule 1925(b) statement, there is no authority that would provide a new trial as a remedy.

[4] Detective Pitts's first name is not included in the record.

Gregory Santamala about the murder of Charmaine McGuilkin. During this interview, Stibbins related that he saw Appellant fire the shots that killed Ms. McGuilkin. Commonwealth Exhibit 25A. Stibbins also testified at Appellant's preliminary hearing that he witnessed Appellant shoot the victim. N.T. (Preliminary Hearing), 11/15/11, at 6. At trial, however, Stibbins recanted his earlier statements and testified that he did know who shot Ms. McGuilken. N.T. (Trial), 10/23/13, at 51. He acknowledged that he previously named Appellant as the shooter in his statement, but he claimed that the detectives conducting the interview threatened to charge him with both the instant murder and an unrelated attempted homicide if he did not testify to an eyewitness account incriminating Appellant. *Id*. at 52. Stibbins claimed that the detectives, rather than asking him questions, directed him to answer the questions as if he were present at the scene. *Id*. at 76. At trial, Detective Santamala denied that Stibbins was fed any answers during the interrogation. *Id.* at 257.

Appellant argues on appeal that the Pennsylvania Rules of Professional Conduct mandate that a prosecutor abandon a prosecution if justice so requires. He urges that prosecutors must seek justice, not only convictions, and that this search for justice includes an obligation to ensure that the accused receives a fair trial. Appellant asserts that once Stibbins recanted his identification of Appellant as the perpetrator of the subject crimes, the Commonwealth was required to discontinue its prosecution and investigate

Stibbins's claim that the detectives threatened him with prosecution if he refused to testify as a witness for the Commonwealth.

The trial court addressed Appellant's claim of prosecutorial misconduct, as follows:

> [Appellant] argues that the Commonwealth committed misconduct when it continued to prosecute him after Aasim Stibbins repudiated his statement incriminating [Appellant]. He cites no authority in support of the notion that it is misconduct to pursue a conviction when a witness, even a key witness, claims that his inculpatory statement was not voluntary or accurate. In fact, recantations are a sadly common feature of criminal actions. *See, e.g., Commonwealth v. Brown*, 52 A.3d 1139 (Pa. 2012) (conviction based solely on statements subsequently repudiated in court is permissible). Under *Brown*, it is clear that the [Appellant's] rights were not violated by a prosecution that included the admission of statements that were subsequently repudiated, and this claim is meritless.

Trial Court Opinion, 9/9/14, at 11–12.

Although the trial court addressed the allegation of prosecutorial misconduct and we agree generally with its assessment of the legal issue, Appellant has waived this argument. A claim of prosecutorial misconduct "either sounds in a specific constitutional provision that the prosecutor allegedly violated or . . . implicates Fourteenth Amendment due process." **Commonwealth v. Tedford**, 960 A.2d 1, 28 (Pa. 2008). Because the benchmark of due process is the fairness of the trial rather than the accountability of the prosecutor, it is the trial court's ruling on the alleged prosecutorial transgression that is reviewed on appeal, not the underlying misconduct. **Commonwealth v. Arrington**, 86 A.3d 831, 853 (Pa. 2014).

Consequently, where, as here, Appellant did not raise a contemporaneous objection to the prosecutor's failure to discontinue the prosecution, there is no trial court ruling to scrutinize, and the issue is waived. **See** Pa.R.A.P. 302(a) (providing that issues not raised in the lower court are waived and cannot be raised for first time on appeal); **Arrington,** 86 A.3d at 854 (claim of prosecutorial misconduct waived pursuant to Pa.R.A.P. 302(a) because counsel did not object to prosecutor's statement).

Appellant also argues that he is entitled to a new trial due to the unreliability of the testimony of Commonwealth witness Corey Williams. On February 9, 2011, Williams was interviewed by Detective Levi Morton. In his statement, Williams related that Aasim Stibbins told him on the day of the shooting that Appellant shot the victim. Commonwealth Exhibit 33. Then, "[a]bout 2–3 months after[,] [Appellant] told [Williams] that 'I rocked Charmaine, I shot her in the head.'" **Id**. On cross-examination, Williams clarified that the "two to three months later" language in the police statement was in error and what he actually said, or meant to say, was that Appellant confessed his involvement "two to three months before" Williams gave his February 9, 2011 statement to the police. N.T. (Trial), 10/22/13, at 229.

Appellant contends on appeal that Williams's trial testimony was untrustworthy because it differed from the statement he provided earlier to Detective Morton. Appellant also avers that because he was incarcerated in

the two-to-three-month period after the shooting, his alleged conversation with Williams was physically impossible. Finally, Appellant asserts that Williams was motivated to lie because he had criminal charges pending against him.

The trial court considered Appellant's arguments in this regard as a challenge to the weight of the evidence,[5] and concluded as follows:

> In the context of the wealth of evidence establishing the [Appellant's] guilt, any uncertainty as to dates when a conversation is recalled after the fact is hardly shocking to the conscience of this Court. Further, [Appellant] has submitted no evidence to establish that he would have been incarcerated during the time period that the statement suggests that the confession took place. Because this argument is extremely weak and unsupported, it should be rejected.

Trial Court Opinion, 9/9/14, at 11.

As to the complaint that Williams's trial testimony concerning the timing of his conversation with Appellant was inconsistent with his statement to Detective Morton, we agree with the trial court that contradictions in a witness's testimony concern the witness's credibility and are for the fact-finder to resolve. *Commonwealth v. Tharp*, 830 A.2d 519, 528 (Pa. 2003). As the Pennsylvania Supreme Court has explained:

> A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege

---

[5] Appellant raised a challenge to the weight of the evidence in his post-sentence motion.

- 10 -

that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

**Commonwealth v. Lofton**, 57 A.3d 1270, 1273 (Pa. Super. 2012) (quoting

**Commonwealth v. Widmer**, 744 A.2d 745, 752 (Pa. 2000) (citations

omitted)).

In the instant matter, when Williams was cross-examined about the time-frame of Appellant's confession, he clarified that the conversation occurred two or three months prior to February 9, 2011, and that the information to the contrary in his earlier statement was either his mistake or an error in the detective's recording. Thus, the perceived conflict in Williams's recollection was less an inconsistency than a misunderstanding. Accordingly, the trial court did not abuse its discretion in concluding that the verdict was not contrary to the evidence. **See Lofton**, 57 A.3d at 1273 (appellate review is limited to whether trial court palpably abused its discretion in ruling on weight of evidence claim).

Appellant also assails Williams's credibility by avowing that Williams was motivated to lie because he had criminal charges pending against him and did not want to return to jail. On direct examination, Williams admitted as much and offered that he provided information to the police about Ms. McGuilken's murder, hoping for some leniency in his own situation. N.T.

(Trial), 10/22/13, at 194. On cross-examination, Williams explained that, although he was eager to receive some help regarding his personal legal woes, he was not promised anything in return for his testimony against Appellant. *Id*. at 225.

This particular challenge to Williams's believability also implicates the weight to be accorded to the evidence. Here, the jury was clearly aware of Williams's legal situation, and it was within its province to assess whether Williams's credibility was compromised thereby. *Commonwealth v. James*, 46 A.3d 776 (Pa. Super. 2012) (role of the fact-finder is to determine weight to be accorded witness's testimony and to believe all, part, or none of evidence).

Appellant also argues that Williams's testimony was discredited by the "incontrovertible physical facts" rule. The Pennsylvania Supreme Court has held that "'testimony in conflict with the incontrovertible physical facts and contrary to human experience must be rejected[.]'" *Commonwealth v. Charleston*, 94 A.3d 1012, 1041 (Pa. Super. 2014) (quoting *Widmer*, 744 A.2d at 752). Appellant maintains that he was incarcerated when Williams claimed that Appellant told him that Appellant killed Ms. McGuilken. He thus submits that the undisputed facts reveal that the conversation never occurred and any evidence of it should have been disallowed.

Appellant is not entitled to enforcement of the incontrovertible physical facts rule in this matter. There was no evidence presented at trial that

Appellant was incarcerated when he supposedly confessed to Williams. Therefore, there were no physical facts controverting Williams's testimony regarding the timing of the conversation. Appellant's argument is simply unavailing.

Appellant's final argument is that a new trial is warranted because witnesses Tyree Thomas and Tevin Clark provided hearsay testimony at trial that should have been excluded. We agree with the trial court that this assertion of error is waived because Appellant did not object to this testimony at trial. Trial Court Opinion, 9/9/14, at 6. *See* Pa.R.E. 103(a) (party may claim error in admission of evidence only when party makes a timely objection); *Commonwealth v. Heckathorn*, 241 A.2d 97, 102 (Pa. 1968) (failure to object to purported hearsay testimony resulted in waiver).

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/1/2015