J-S47010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KAREEM ALI SMITH, | |
| Appellant | No. 2192 MDA 2015 |

Appeal from the Judgment of Sentence July 28, 2015
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0000615-2015

BEFORE:  SHOGAN, LAZARUS, and JENKINS, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED AUGUST 11, 2016**

Appellant, Kareem Ali Smith, appeals from the judgment of sentence entered July 28, 2015, in the Court of Common Pleas of Lycoming County. We affirm.

The relevant facts and procedural history can be summarized as follows.  At the time of the events giving rise to this matter, Appellant was a parolee.  Under the terms of his supervision and pursuant to a home provider agreement[1] prepared in August 2012, Appellant was to reside at

_____

[1] Parole Agent Jason LaMay provided the following definition of a "home provider agreement:"

> Prior to the offender leaving the institution in most cases they have to have an approved home plan and part of that process is an agent goes to the proposed residence, investigates a home

*(Footnote Continued Next Page)*

687 Grier Street in Williamsport, PA. N.T., 7/28/15, at 17, 21-22. The terms of the agreement set forth, *inter alia*, that no weapons or firearms were allowed in the home, that at the time of the agreement there were no weapons or firearms in the home, and that none would be brought into the home while the offender lived at the residence. *Id.* at 18.[2] Appellant, his mother, and one child were approved to reside at this address. *Id.* at 22. It is a condition of parole that an offender must notify his agent prior to changing his residence, and the offender is required to provide notice of a change in living status within seventy-two hours of the change. *Id.* at 19. Agent LaMay took over supervision of Appellant in February or March 2014. *Id.* at 20-21.

On March 23, 2015, Agent LaMay met with Appellant due to Appellant owing back supervision fees. *Id.* at 24. At that time, Agent LaMay had Appellant provide a urine sample, which tested positive for a controlled substance. *Id.* at 24. Appellant admitted that he had been smoking marijuana regularly. *Id.* Agent LaMay advised Appellant that "we'd address

*(Footnote Continued)*

> plan and has the home provider sign what's called the home provider agreement letter with the conditions of allowing the offender to live there and acknowledging that the person who is providing the home is aware of all those conditions.

N.T., 7/28/15, at 16.

[2] Agent LaMay testified that under the terms of his supervision, Appellant was not permitted to possess any type of firearm or weapon. N.T., 7/28/15, at 22.

the issue in the next couple [of] days." *Id.* Agent LaMay received permission from his supervisor to conduct a search of Appellant's residence. *Id.* at 24-25.

On March 24, 2015, at approximately 8:40 a.m., Agent LaMay went to Appellant's approved residence at 687 Grier Street. *Id.* at 25-26. After knocking at the residence and receiving no answer, Agent LaMay and the agents accompanying him decided to pull back and observe the home. *Id.* at 25. At approximately 9:30 a.m., Agent LaMay saw Appellant exit 687 Grier Street from the door at the back of the residence. *Id.* at 25. After restraining Appellant and placing him in handcuffs, the agents obtained entrance to 687 Grier Street with Appellant. *Id.* at 26. Agent LaMay testified to the following upon their entrance to the residence:

> We entered the house at the front door, we stopped in the living room. We asked [Appellant], okay, where do you keep your belongings and have been sleeping? He identified he had been sleeping on the couch and that his personal belongings were kept in the middle room upstairs. We then took him as usual procedure to the kitchen and sat him on a wooden chair where one US [marshal] stayed and watched him while the rest of us began the search of the home.

*Id.* at 26.

Upon entering the middle bedroom identified by Appellant, Agent LaMay observed a large sword on the wall. *Id.* at 27. Agent LaMay also discovered an assault rifle, which was wrapped in a blanket, behind the television. *Id.* at 27-28. The agents also found a significant amount of men's clothing and approximately six to eight pairs of men's shoes in the

closet. *Id.* at 29. Additionally, in the back bedroom that was identified as Appellant's room in the original home agreement, Agent LaMay discovered the frame of a .22 caliber pistol. *Id.* at 29. The agents also found pistol grips, the trigger guard, and trigger in the cabinet next to the couch where Appellant indicated he had been sleeping. *Id.* at 30. Agent LaMay explained that they also "found a large amount of various styles of ammunition throughout the house, most of them were found in the cabinet behind the couch and next to the couch where [Appellant] said he was sleeping, probably 40 to 50 rounds of various ammunitions." *Id.* at 30.

Police Officer Mark A. Lindauer, employed by the City of Williamsport, was dispatched to 687 Grier Street on March 24, 2015, after the rifle had been found by the parole agents. N.T., 7/28/15, at 47. Officer Lindauer received the rifle and had a firing test conducted on it. *Id.* at 48-49. The results of the firing test indicated that the rifle was functioning. *Id.* at 49.

Michelle Dobbs, Appellant's mother, also testified. N.T., 7/28/15, at 50. She testified that she alone lived at 687 Grier Street in March of 2015. *Id.* at 51. Ms. Dobbs stated that Appellant last lived with her in October 2014. *Id.* at 51. Appellant moved next door to 685 Grier Street, with his cousin, at that time. *Id.* at 51-52. She stated that Appellant had begun living at 685 Grier Street, which was attached to 687 Grier Street, with his cousin months earlier than January 1, 2015, when Appellant obtained the lease for that property. *Id.* at 52, 59. She further testified that Appellant

did not live at 687 Grier Street at the time of the search on March 24, 2015. *Id.* at 55. Ms. Dobbs also asserted that none of Appellant's belongings were at 687 Grier Street at the time of the search. *Id.* at 55, 68. She explained that the middle bedroom was her husband's room, where he kept his belongings and entertained guests. *Id.* at 55, 56, 61. Ms. Dobbs testified that while she had knowledge of the sword in the bedroom belonging to her husband, she had no knowledge of the rifle or any handguns in her residence. *Id.* at 55-56.

Appellant testified that on March 24, 2015, he was living at 685 Grier Street. N.T., 7/28/15, at 70. Appellant explained that he obtained a lease for 685 Grier Street on January 1, 2015, but was living at that property with his cousin prior to that date. *Id.* He acknowledged that he had not been truthful with the agents when they apprehended him on March 24, 2015, about his address, and that he had not been truthful for months preceding his arrest regarding the change in his address. *Id.* at 70-74. Appellant further testified that the rifle, pistol frame, and other gun parts found at 687 Grier Street were not his, nor did he have any knowledge of them. *Id.* at 75-76.

Appellant was charged with the offense of persons not to possess, use, manufacture, control, sell, or transfer firearms pursuant to 18 Pa.C.S. § 6105. A nonjury trial was held on July 28, 2015. Appellant was convicted of the charge, and on the same date was sentenced to twenty-four to forty-

eight months of incarceration in a state correctional institution and to pay the costs of prosecution. Order, 7/28/15, at 1.

Appellant filed a post-sentence motion on July 31, 2015, which was denied by order entered November 20, 2015. Appellant filed his notice of appeal on December 16, 2015. The trial court and Appellant complied with the requirements of Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I.      Whether the evidence was insufficient to sustain a verdict of guilty as to the charge.

II.     Whether the weight of the evidence was sufficient to sustain conviction as to the charge.

III.    Whether the sentence imposed upon [Appellant] was excessive in nature.

Appellant's Brief at 7.[3]

In his first issue, Appellant asserts that the evidence was insufficient to meet the Commonwealth's burden of proving the elements necessary for a conviction of persons not to possess, use, manufacture, control, sell, or transfer firearms. Appellant's Brief at 13. Appellant argues that at the time of the search, he did not live at 687 Grier Street, and that all of his belongings had been removed from that residence. *Id.* Appellant acknowledged that he failed to update his address with his parole officer and that he lied to his parole officer on March 24, 2015, about his actual

---

[3] We note that the Commonwealth failed to file a brief in this matter.

address, but maintains that he did so out of fear of receiving a parole violation for failing to report his change of address. *Id.*

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. *Commonwealth v. James*, 46 A.3d 776, 779 (Pa. Super. 2012). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. *Commonwealth v. Vogelsong*, 90 A.3d 717, 719 (Pa. Super. 2014). "[I]n applying the above test, the entire record must be evaluated and all evidence actually received must be considered." *Commonwealth v. Estepp*, 17 A.3d 939, 944 (Pa. Super. 2011). Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Ratsamy*, 934 A.2d 1233, 1235-1236 (Pa. 2007).

> The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict.

*Id*. at 1235–1236 (emphasis in original, internal citation omitted).

As Appellant was not in physical possession of the contraband, the Commonwealth was required to establish that he had constructive possession of the seized items to support his convictions. ***Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa. Super. 2013).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

***Commonwealth v. Brown***, 48 A.3d 426, 430 (Pa. Super. 2012) (internal quotation marks and citation omitted). Additionally, it is possible for two people to have joint constructive possession of an item of contraband. ***Commonwealth v. Kinard***, 95 A.3d 279, 292 (Pa. Super. 2014).

Section 6105, persons not to possess, use, manufacture, control, sell or transfer firearms, provides that:

> A person . . . whose conduct meets the criteria in subsection (c) [which includes prior convictions of the Controlled Substance, Drug, Device and Cosmetic Act punishable by a term of imprisonment exceeding two years] shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

- 8 -

18 Pa.C.S. § 6105(a)(1).[4] "Firearm" is defined to include "any weapons which are designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon." 18 Pa.C.S. § 6105(i).

The trial court provided the following analysis on this issue:

> Here, viewing the evidence, and the inferences drawn from that evidence in the light most favorable to the Commonwealth, and based upon the totality of circumstances, there was sufficient evidence to establish that [Appellant] constructively possessed the rifle. The rifle was in the middle bedroom of 687 Grier Street. [Appellant] had told the Board that he was living in 687, and he exited 687 on March 24, 2015. [Appellant] had a key to 687. He told LaMay that he slept on 687's couch, and he said that his belongings were in 687's middle bedroom. [Appellant] knew that there were clothes in the middle bedroom. The middle bedroom was unlocked and contained male clothes and shoes. Such evidence is sufficient to establish that [Appellant] possessed the rifle.
>
> In addition, viewing the evidence, and the inferences drawn from that evidence in the light most favorable to the Commonwealth, and based upon the totality of the circumstances, there was sufficient evidence to establish that [Appellant] constructively possessed the pistol frame. The frame was in a dresser in the back bedroom of 687 Grier Street. [Appellant] had told the Board that 687's back bedroom was his bedroom. On March 24, 2015, [Appellant] exited 687. Such evidence is sufficient to establish that [Appellant] possessed the pistol frame.

Trial Court Opinion, 11/20/15, at 6-7.

---

[4] Appellant was under supervision as a result of his prior conviction for possession with intent to deliver cocaine. N.T., 7/28/15, at 21. Appellant was sentenced for that conviction on September 30, 2009, to a term of imprisonment for "four years minimum to eight years maximum SCI." *Id.* at 21-22.

We agree with the trial court's summation of evidence and its conclusion. Additionally, we note that Williamsport police conducted a firing test and confirmed that the rifle was operational. Accordingly, Appellant's claim that there was insufficient evidence supporting his conviction fails.

Appellant next argues that "the verdict of the jury[5] was against the weight of the evidence as to all charges." Appellant's Brief at 14. Specifically, Appellant avers that the evidence failed to show that he committed the offense of person not to possess, use, manufacture, control, sell, or transfer firearms. *Id.* at 14. Appellant contends that at the time of the search, he no longer lived at 687 Grier Street and no longer had any belongings at that residence. *Id.* at 15. Appellant asserts that the trial court erred in failing to grant Appellant a new trial. *Id.*

The law pertaining to weight-of-the-evidence claims is well settled. The weight of the evidence is a matter exclusively for the fact finder, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Forbes*, 867 A.2d 1268, 1272–1273 (Pa. Super. 2005). The grant of a new trial is not warranted because of "a mere conflict in the testimony" and must have a stronger foundation than a reassessment of the credibility of witnesses.

_____

[5] We note that there was no jury in this case. As noted, the matter proceeded as a nonjury trial.

***Commonwealth v. Bruce***, 916 A.2d 657, 665 (Pa. Super. 2007). Rather, the role of the trial judge is to determine that, notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. ***Id.*** An appellate court's purview:

> is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

***Commonwealth v. Knox***, 50 A.3d 732, 738 (Pa. Super. 2012) (internal citations omitted). An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice. ***Forbes***, 867 A.2d at 1273. "[T]he trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." ***Commonwealth v. Diggs***, 949 A.2d 873, 879–880 (Pa. 2008).

In this case, the trial court concluded that the weight of the evidence supported the verdict of guilt. The trial court provided the following explanation for its decision:

> Here, the verdict does not shock this [c]ourt's sense of justice. Although Dobbs and [Appellant] testified that [Appellant] was not living in 687 Grier Street, the [c]ourt found the testimony not credible. The [c]ourt found the testimony not credible because [Appellant] exited 687, had a key to 687, told the Board that he was living in 687, told LaMay that he had slept in 687, knew there were clothes in 687's middle bedroom, and said that his belonging were in 687's middle bedroom. Given the

- 11 -

> evidence discussed in the previous section, the verdict does not shock the [c]ourt's sense of justice.

Trial Court Opinion, 11/20/15, at 7.

The court, sitting as the finder of fact, was free to believe all, part, or none of the evidence against Appellant. The court weighed the evidence and concluded Appellant perpetrated the crime of persons not to possess firearms. Although Appellant and his mother testified that Appellant no longer lived at 687 Grier Street and that he had no possessions at that residence at the time of the search, the trial court did not find Appellant's version of the events credible. This determination is not so contrary to the evidence so as to shock one's sense of justice. Thus, we decline Appellant's invitation to assume the role of fact finder and to reweigh the evidence.

In his third issue, Appellant argues that his sentence is excessive. Appellant's Brief at 15. Specifically, Appellant contends that the trial court imposed a manifestly excessive sentence that was disproportionate to the offenses in light of Appellant's prior record score, his age, and his criminal history. *Id.* at 16. Appellant also maintains that the sentence was excessive, as it was inconsistent with the protection of the public, the gravity of the offense, and Appellant's rehabilitative needs. *Id.* at 17.

We note that "[t]he right to appellate review of the discretionary aspects of a sentence is not absolute." ***Commonwealth v. Zirkle***, 107 A.3d 127, 132 (Pa. Super. 2014). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a

petition for allowance of appeal. ***Commonwealth v. W.H.M.***, 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in ***Commonwealth v. Moury***, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [708]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Id.*** at 170 (citing ***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006)). The determination of whether there is a substantial question is made on a case-by-case basis, and this Court will grant the appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. ***Commonwealth v. Sierra***, 752 A.2d 910, 912–913 (Pa. Super. 2000).

Herein, Appellant brought a timely appeal. Additionally, while Appellant failed to raise a concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f) in a separate section of

his brief, he raises this claim pursuant to Pa.R.A.P. 2119(f) in the argument section. While not strictly compliant with Pa.R.A.P. 2119(f),[6] we do not find this issue waived on this basis. Furthermore, the Commonwealth has failed to object to this procedural error.[7]

Fatal to his claim, however, is the fact that Appellant failed to raise this challenge at the time of sentencing or in his post-sentence motion. N.T., 7/28/15, at 107-109; Post Trial Motion, 7/31/15, at 1-4. Thus, this claim is waived. *Commonwealth v. Lamonda*, 52 A.3d 365, 371 (Pa. Super. 2012) ("Issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived.").

Judgment of sentence affirmed.

---

[6] Pa.R.A.P. 2119(f) provides:

> An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of the sentence.

[7] As noted, the Commonwealth failed to file a brief in this matter.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/11/2016</u>